**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE EVOQUA WATER TECHNOLOGIES CORP. DERIVATIVE LITIGATION | Lead Case No. 2:19-cv-00410-MPK |

**DECLARATION OF TIMOTHY BROWN IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE**
**SETTLEMENT**

I, Timothy Brown, declare as follows:

1.      I am the managing attorney at The Brown Law Firm, P.C., Co-Lead Counsel for plaintiffs Dallas Torgersen and Robert Hyams in the above-captioned consolidated shareholder derivative action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement.

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation and Agreement of Settlement dated July 28, 2021 and Exhibits A–D thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 2nd day of August, 2021, in New York, New York.

*/s/ Timothy Brown*
Timothy Brown

**Execution Copy**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

---

IN RE EVOQUA WATER TECHNOLOGIES CORP.
DERIVATIVE LITIGATION

Case No. 2:19-cv-00410-MPK

---

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement, dated as of July 28, 2021 (the "Stipulation") is entered into between and among: (a) plaintiffs Dallas Torgersen ("Torgersen") and Robert Hyams ("Hyams" and with Torgersen, "Plaintiffs"), derivatively on behalf of Evoqua Water Technologies Corp. ("Evoqua" or the "Company"); (b) Evoqua shareholder Mike Merkwan ("Merkwan"), who made a litigation demand (the "Demand") on Evoqua's Board of Directors (the "Board") as described below; (c) defendants Ronald C. Keating, Benedict J. Stas, Martin Lamb, Judd A. Gregg, Harbhajan Bhambri, Gary A. Cappeline, Brian Hoesterey, Vinay Kumar, and Peter M. Wilver (collectively, the "Individual Defendants"); (d) defendants AEA Investors LP ("AEA"), AEA EWT Holdings LP, AEA EWT Holdings GP LLC, AEA Investors Fund V LP, AEA Investors Participant Fund V LP, AEA Investors QP Participant Fund V LP, AEA Investors Fund V-A LP, AEA Investors Fund V-B LP, AEA Investors PF V LLC, AEA Investors Partners V LP, and AEA Management (Cayman) Ltd. (collectively, the "AEA Defendants"); and (e) nominal defendant Evoqua (together with the Individual Defendants and the AEA Defendants, the "Defendants").  Plaintiffs, Merkwan and Defendants are collectively referred to as the "Parties." This Stipulation sets forth the terms and conditions of the settlement and resolution (the "Settlement") of this consolidated derivative action (the "Consolidated Action" or the "Derivative Action") and the Demand, and is intended by the Parties to fully, finally, and forever resolve,

release, discharge, and settle all Released Claims (as defined below) as against the Released Persons (as defined below), subject to the final approval of the Court.

**WHEREAS:**

A.      On November 1, 2017, Evoqua commenced an initial public offering of its common stock (the "IPO") pursuant to which its stock became publicly traded.

B.      On March 15, 2018, Evoqua commenced a secondary public offering of its common stock (the "SPO").

C.      On November 6, 2018, a putative securities class action complaint was filed in the United States District Court for the Southern District of New York, later re-titled as *In re Evoqua Water Technologies Corp. Securities Litigation*, No. 1:18-cv-10320, brought on behalf of certain purchasers of Evoqua common stock (the "Securities Class Action").

D.      On April 3, 2019, the lead plaintiffs in the Securities Class Action filed an amended complaint against Evoqua, certain of Evoqua's officers and directors, AEA and certain of its affiliates, and the underwriters of the IPO and the SPO, asserting claims for violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  The amended complaint alleged that certain defendants made materially false and misleading statements and omissions about Evoqua's business, including in the offering documents for the IPO and the SPO (the "Offering Materials"), and that the price of Evoqua common stock was artificially inflated during the period from the date of the IPO through the date of Evoqua's October 30, 2018 announcement of its preliminary financial results for the fourth quarter and full fiscal year 2018.

E.      On April 10, 2019, plaintiff Torgersen filed a shareholder derivative action in this Court on behalf of nominal defendant Evoqua, and against the Individual Defendants, captioned

2

*Torgersen v. Keating, et al.*, Case No. 2:19-cv-00410 (the "*Torgersen* Action").  The *Torgersen* Action asserted claims arising from substantially similar facts at issue in the Securities Class Action, and asserted claims under the Exchange Act as well as claims for alleged breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement and waste of corporate assets.

       F.      On June 14, 2019, in light of the similarities between the subject matter and factual allegations in the *Torgersen* Action and the Securities Class Action, and in the interests of judicial economy, conservation of time and resources, and orderly management of those actions, the parties to the *Torgersen* Action entered into a stipulation staying the *Torgersen* Action pending the resolution of the defendants' anticipated motion to dismiss in the Securities Class Action (the "Initial Stay").  The Court entered an Order imposing the Initial Stay on June 14, 2019.

       G.      On February 6, 2020, Merkwan sent the Demand to Evoqua's Board, requesting that the Board investigate and pursue, on behalf of the Company, causes of action for breaches of fiduciary duties against AEA and certain of the Company's officers and directors arising from substantially similar facts at issue in the *Torgersen* Action and the Securities Class Action. Thereafter, Merkwan and the Board agreed to hold the Demand in abeyance pending the resolution of the defendants' anticipated motion to dismiss in the Securities Class Action (the "Initial Abeyance Agreement").

       H.      On March 30, 2020, the court in the Securities Class Action granted in part and denied in part the defendants' motion to dismiss, thereby triggering the lifting of the Initial Stay. Specifically, the court dismissed the Exchange Act claims but sustained the Securities Act claims arising out of the IPO and the SPO (except as against certain of the executive defendants).

I.     On July 27, 2020, plaintiff Hyams filed a shareholder derivative action in this Court, captioned *Hyams v. Keating, et al.*, Case No. 2:20-cv-01122 (the "*Hyams* Action").  The complaint in the *Hyams* Action alleged substantially similar facts and made substantially similar claims as the *Torgersen* Action against the Individual Defendants, and added as defendants the AEA Defendants.

J.     On August 18, 2020, the parties to the *Torgersen* Action and the *Hyams* Action filed a joint stipulation requesting that the Court: (a) consolidate the *Torgersen* Action and the *Hyams* Action; (b) designate The Rosen Law Firm, P.A. and The Brown Law Firm, P.C. as co-lead counsel representing Plaintiffs in the Consolidated Action; and (c) in the interests of judicial economy, conservation of time and resources, and orderly management of those actions, stay the *Torgersen* Action and the *Hyams* Action pending the resolution of the anticipated motions for summary judgment to be filed in the Securities Class Action (the "Second Stay"). Pursuant to the terms of the Second Stay, Plaintiffs were also to be promptly advised of and permitted to participate in any mediation proceedings and formal settlement talks in the Securities Class Action, and to be given copies of the written discovery materials produced by any Defendant in the Securities Class Action. On, September 16, 2020, the Court entered an order imposing the Second Stay.

K.     On September 1, 2020, Evoqua, Merkwan and the Board agreed to continue holding the Demand in abeyance pending the resolution of the anticipated motions for summary judgment to be filed in the Securities Class Action (the "Second Abeyance Agreement").

L.     In late 2020, the parties to the Securities Class Action began discussions about retaining an experienced mediator to see if the parties might be able to resolve that case, and ultimately retained Greg Danilow, Esq. (the "Mediator") of Phillips ADR, a nationally recognized alternative dispute firm with significant experience in mediating securities class actions and other

4

complex litigations.  In accordance with the Second Stay and the Second Abeyance Agreement, Plaintiffs and Merkwan were invited to and did participate in that meditation process.

M.      On February 27, 2021, Plaintiffs sent Defendants a settlement demand that included a proposal for extensive changes to the Company's corporate governance practices. On March 12, 2021, Merkwan separately sent Defendants a settlement demand that included a proposal for extensive changes to the Company's corporate governance practices.

N.      In connection with the mediation process, Plaintiffs, Merkwan, and Evoqua and the Individual Defendants prepared and exchanged comprehensive mediation statements addressing issues relating to liability and damages.

O.      In advance of the initial mediation session, and in accordance with the Second Stay, Defendants produced to Plaintiffs and Merkwan more than 750,000 documents that they had produced in the Securities Class Action.

P.      On March 19, 2021, the Plaintiffs, Merkwan, and Evoqua and the Individual Defendants participated in a full-day mediation session via video-conference, which did not result in the Parties agreeing to a settlement. Over the seven and a half weeks following the mediation session, Plaintiffs, Merkwan, and the Defendants continued to engage in settlement negotiations, including the exchange of written proposals for certain corporate governance changes that Evoqua might adopt in response to Plaintiffs' and Merkwan's claims.

Q.      Following extensive negotiations, and with the aid of the Mediator, the Parties were ultimately able to reach an agreement in principle to settle the Consolidated Action and resolve the Demand and negotiated and executed a term sheet (the "Term Sheet") on May 10, 2021, which memorialized the material terms (subject to the Court's approval) of the Parties' settlement.  In particular, the Term Sheet sets forth, among other things, the Parties' binding agreement to settle

all claims asserted on behalf of Evoqua against all Defendants in the Consolidated Action and the Demand in exchange for the Board adopting and implementing certain corporate governance revised practices.

R.      Plaintiffs and Merkwan maintain that they have: (i) thoroughly considered the facts and law underlying their claims; and (ii) weighed the benefits the Settlement will confer on Evoqua and its stockholders against the risks and delay of continued litigation.  Based on those analyses, Plaintiffs and Merkwan determined that it is in the best interests of Evoqua and its stockholders that the Consolidated Action and the Demand be fully and finally resolved in the manner and upon the terms and conditions set forth in this Stipulation, and that these terms and conditions are fair, reasonable, adequate, and in the best interests of Evoqua.

S.      Defendants have denied and continue to deny the allegations of wrongdoing, liability, and violation of any laws and the existence of any damages asserted against them. Defendants believe that they have substantial defenses to the claims alleged.  Defendants have further asserted that, at all relevant times, they acted in good faith, and in a manner they reasonably believed to be in the best interests of Evoqua and its stockholders.  Nevertheless, Defendants have concluded that further litigation would be time consuming and expensive.  After weighing the costs, disruption, and distraction of continued litigation, they have determined that, in order to eliminate the risk, burden, and expense of further litigation, and without admitting any wrongdoing or liability whatsoever, the litigation should be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED**, subject to the approval of the Court, that the Consolidated Action and the Demand shall be fully and finally compromised and settled, that the Released Claims shall be released as against the Released Persons, and that

the Consolidated Action shall be dismissed with prejudice, upon and subject to the terms and conditions of the Settlement, as follows:

## **DEFINITIONS**

1.      In addition to the terms defined elsewhere in this Stipulation, the following terms have the meanings specified below:

(a)      "Current Evoqua Shareholder" or "Current Evoqua Shareholders" means any and all persons and entities who hold of record, or beneficially own, common stock of Evoqua as of the close of business on the date that this Stipulation is filed with the Court and continue to hold their Evoqua stock as of the date of the Settlement Hearing. Excluded from these definitions are the Individual Defendants, the AEA Defendants, the officers and directors of Evoqua, and their immediate families, legal representatives, heirs, successors, assigns, or any entity in which the Individual Defendants have or had a controlling interest.

(b)      "Effective Date" means the first date by which all of the conditions precedent set forth in Paragraph 12 of this Stipulation have been met and occurred or have been waived in writing by the Parties.

(c)      "Fees and Expenses Award" means the sum to be paid for all of Plaintiffs' Counsel's fees and expenses, subject to Court approval, as described in Paragraph 15 of this Stipulation.

(d)      "Final" with respect to the judgment approving this Settlement or any other court order means: (i) if no appeal from an order or judgment is taken, the date on which the time for taking such an appeal expires under the Federal Rules of Appellate Procedure; or (ii) if any appeal is taken, the date on which all appeals, including petitions for rehearing or reargument, have been finally disposed of (whether through expiration of time to file, denial of any request for review, by affirmance on the merits or otherwise) in a manner that does not result in any material alteration of the order or judgment.  Notwithstanding the foregoing, the Court's ruling or failure to rule on any application for attorneys' fees and expenses or any modification or reversal of the Fees and Expenses Award shall not preclude any judgment approving the Settlement from becoming Final.

(e)      "Final Order and Judgment" means the final order and judgment to be entered by the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, substantially in the form attached as Exhibit D, approving the Settlement and dismissing the Consolidated Action with prejudice and without costs to any Party (except as provided in this Stipulation).

(f)      "Notice" means the Notice of Pendency of Derivative Action, Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear, substantially in the form attached as Exhibit C.

(g)     "Person" means any individual, corporation, professional corporation, limited liability company, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

(h)     "Plaintiffs' Counsel" means, collectively, The Brown Law Firm, P.C., The Rosen Law Firm, P.A., Bragar Eagel & Squire, P.C., Law Office of Leon Aussprung, MD, LLC, and any other counsel representing Plaintiffs or Merkwan in connection with the Consolidated Action or the Demand.

(i)     "Preliminary Approval Order" means the order to be entered pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, substantially in the form attached as Exhibit B: (a) preliminarily approving the Settlement; (b) approving the form and manner of notice to Current Evoqua Shareholders of the pendency of the Consolidated Action, the Settlement, and their right to object; and (c) establishing the procedure and schedule for the Court's consideration of the Settlement, dismissal of the Consolidated Action with prejudice, and Plaintiffs' Fees and Expenses Award.

(j)     "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

(k)     "Released Defendants' Claims" means any and all claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, judgments, defenses, counterclaims, offsets, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Consolidated Action, the Demand or the Plaintiffs' Released Claims. Released Defendants Claims' shall not include the right to enforce the terms of this Stipulation, the Settlement, and/or the Final Order and Judgment.

(l)     "Released Defendant Persons" means the Defendants and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Defendant, and each of their respective predecessors, successors, and assigns.

(m)     "Released Plaintiffs' Claims" means all claims or causes of action (including Unknown Claims) against any of the Released Defendant Persons that: (i) were asserted or could have been asserted derivatively in the Derivative Action or the Demand; (ii) would have

8

been barred by *res judicata* had the Derivative Action been fully litigated to final judgment; (iii) that have been, could have been, or could in the future be, asserted derivatively in any forum or proceeding or otherwise against any of the Released Defendant Persons that concern, are based upon, involve, or arise out of or relate to any of the subject matters, allegations, transactions, facts, events, occurrences, disclosures, representations, statements, omissions alleged, acts, failures to act, alleged mismanagement, misconduct, concealment, alleged misrepresentations, alleged violations of local, state or federal law, sale of stock, or other matters involved, set forth, or referred to, or could have been alleged in or encompassed by, the complaints in the Derivative Action or the Demand; or (iv) arise out of, relate to, or concern the defense, settlement, or resolution of the Derivative Action, the Demand or the Released Claims. Released Plaintiffs' Claims shall not include (i) claims to enforce the terms of this Stipulation and/or the Final Order and Judgment entered pursuant to it, (ii) exclusively direct claims (*i.e.*, as opposed to derivative claims) Evoqua shareholders may have in an individual capacity against Defendants, or (iii) the direct claims made in the Securities Class Action.

(n)     "Released Persons" means the Released Defendant Persons and the Released Plaintiff Persons.

(o)     "Released Plaintiff Persons" means Plaintiffs, Merkwan, Plaintiffs' Counsel, and each and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Plaintiff, Merkwan or any counsel for any Plaintiff or Merkwan, and each of their respective predecessors, successors, and assigns, and all Current Evoqua Shareholders (solely in their capacity as Evoqua shareholders).

(p)     "Releases" means the releases set forth in Paragraphs 4 and 5 below.

(q)     "Revised Practices" means the corporate governance revised practices described in Paragraph 2 of this Stipulation and set forth in Exhibit A, which shall be adopted, implemented, and/or maintained by Evoqua pursuant to and in accordance with the terms of this Stipulation.

(r)     "Settlement Hearing" means a hearing required under Rule 23.1 of the Federal Rules of Civil Procedure, at or after which the Court will review the adequacy, fairness, and reasonableness of the Settlement and determine whether to issue the Final Order and Judgment.

(s)     "Unknown Claims" means any Released Claims that a Person granting a Release does not know or suspect to exist in his, her, or its favor at the time of the Release, including without limitation those which, if known, might have affected the decision to enter into or object to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs, Merkwan, Evoqua and Defendants shall have

expressly waived, and each of the other Current Evoqua Shareholders shall be deemed to have, and by operation of the Final Order and Judgment by the Court shall have, waived, relinquished, and released any and all provisions, rights and benefits conferred by or under California Civil Code § 1542 or any law or principle of common law of the United States or any state or territory of the United States which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiffs, Merkwan, Defendants, and Evoqua acknowledge, and all other Current Evoqua Shareholders by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, Merkwan, Defendants, Evoqua, and all other Current Evoqua Shareholders by operation of law, to completely, fully, finally and forever extinguish any and all Released Claims without regard to the subsequent discovery of additional or different facts. Plaintiffs, Merkwan, Defendants, and Evoqua acknowledge, and all other Current Evoqua Shareholders by operation of law shall be deemed to have acknowledged, that this waiver and the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and is a material element of the Settlement and was relied upon by each and all of the Parties in entering into the Stipulation and agreeing to the Settlement.

## SETTLEMENT CONSIDERATION

2.      In consideration of the full settlement, satisfaction, compromise, and release of the Released Plaintiffs' Claims against the Released Defendant Persons, the dismissal with prejudice of the Consolidated Action, and the resolution of all claims set forth in the Demand, the Board shall adopt resolutions, amend committee Charters, or adopt corporate governance guidelines to implement the Revised Practices, which are set forth in Exhibit A hereto, to the extent that the Board did not already implement any of the Revised Practices after the Parties executed the Term Sheet, within thirty (30) calendar days of the date of entry of the Final Order and Judgment.  The Revised Practices shall be maintained until at least five years following the Effective Date.

3.     Evoqua and the Board acknowledge and agree that the filing, pendency, and settlement of the Consolidated Action and the Demand constitute the primary cause of the Company's decision to adopt and implement the Revised Practices, which are new and beneficial to Evoqua and its stockholders.

## RELEASES AND CLAIM BAR

4.     Upon the Effective Date, Plaintiffs, Merkwan, and Evoqua shall, and each Current Evoqua Shareholder shall be deemed to have by operation of law and the Final Order and Judgment to, fully, finally, and forever release, relinquish, and discharge each and all of the Released Defendant Persons, and covenant not to sue any Released Defendant Person, in each instance with respect to any Released Plaintiffs' Claims, and shall be permanently barred and enjoined from instituting, commencing, or prosecuting the Released Plaintiffs' Claims against the Released Defendant Persons except to enforce the releases and other terms and conditions contained in this Stipulation and/or the Final Order and Judgment.  In addition, Plaintiffs and Merkwan agree not to initiate, prosecute, assist in, or facilitate the prosecution of any other claims arising out of the facts giving rise to the Consolidated Action or the Demand.

5.     Upon the Effective Date, the Defendants shall fully, finally, and forever release, relinquish and discharge each and all of the Released Plaintiff Persons, and covenant not to sue any Released Plaintiff Person, in each instance with respect to any Released Defendants' Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Defendants' Claims against the Released Plaintiff Persons except to enforce the releases and other terms and conditions contained in this Stipulation and/or the Final Order and Judgment.

## PRELIMINARY APPROVAL ORDER

6.     Promptly after the execution of this Stipulation, the Parties shall request the Court to enter the Preliminary Approval Order: (a) preliminarily approving the Settlement; (b) approving

11

the form and manner of notice to Current Evoqua Shareholders of the pendency of the Consolidated Action, the Settlement, and their right to object; and (c) establishing the procedure and schedule for the Court's consideration of the Settlement and dismissal of the Consolidated Action with prejudice.

## STAY OF PROCEEDINGS; INTERIM BAR ORDER

7.      The Parties agree to continue to stay the proceedings in the Consolidated Action and not to initiate or in any way participate in the commencement or prosecution of any proceedings other than those related to the Settlement itself, pending the Final Order and Judgment becoming Final.

8.      The Parties shall request the Court for the Preliminary Approval Order also to provide that pending the determination by the Court as to final approval of the Settlement, Plaintiffs, Plaintiffs' Counsel, Merkwan, and Current Evoqua Shareholders, derivatively on behalf of Evoqua, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Plaintiffs' Claims against any of the Released Defendant Persons in any court or tribunal.

## NOTICE

9.      The proposed Preliminary Approval Order will provide that notice of the Settlement shall be given in the following manner within ten (10) calendar days of the entry of the Preliminary Approval Order: (a) posting of the Preliminary Approval Order, the Notice, and this Stipulation (including its exhibits) on the investor relations section of Evoqua's corporate website, which will be maintained through the date of the Settlement Hearing; (b) issuance by Evoqua of a press release linking to the Notice on a nationally recognized newswire (*e.g.*, PR Newswire, BusinessWire); and (c) disclosure of the terms of the Settlement by Evoqua through the filing of a Form 8-K with the SEC, which filing shall include a copy of the Notice and shall provide a link to the investor

relations page on Evoqua's corporate website where the Preliminary Approval Order, Notice, and the Stipulation may be viewed. Evoqua, on behalf of Defendants, shall be responsible for providing notice of the Settlement in such form and manner as is directed by the Court. Evoqua, on behalf of Defendants, shall also pay or cause to be paid any and all costs associated with providing notice of the Settlement, irrespective of whether the Court approves the Settlement or the Effective Date otherwise fails to occur, and in no event shall Plaintiffs, Merkwan, or Plaintiffs' Counsel be responsible for any notice costs.

### FINAL ORDER AND JUDGMENT; DISMISSAL OF THE ACTION

10.     If, following the Settlement Hearing, the Court approves the Settlement (including any modification made with the consent of the Parties as provided for in this Stipulation) as fair, reasonable, and adequate, the Parties shall jointly and promptly request that the Court enter the Final Order and Judgment.

11.     Upon entry of the Final Order and Judgment, the Consolidated Action shall be dismissed in its entirety and with prejudice, with Plaintiffs, Merkwan, Defendants, and Evoqua each to bear his, her, or its own fees, costs, and expenses, except as expressly provided in this Stipulation or otherwise agreed.

### CONDITIONS OF SETTLEMENT AND TERMINATION

12.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver in writing of all of the following events:

      (a)     the Court has entered the Preliminary Approval Order, substantially in the form attached as Exhibit B;

      (b)     the Court has entered the Final Order and Judgment substantially in the form attached as Exhibit D;

      (c)     the Final Order and Judgment has become Final; and

13

(d)      the Consolidated Action has been dismissed with prejudice.

13.      Plaintiffs and Merkwan (provided they unanimously agree amongst themselves) and Defendants (provided they unanimously agree amongst themselves) shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so, through counsel, to all other Parties within thirty (30) calendar days of: (a) the Court's final refusal to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve the Settlement or any material part of it; (c) the Court's refusal to enter the Final Order and Judgment in any material respect (other than as to the Fees and Expenses Award) or to dismiss the Consolidated Action with prejudice; or (d) the date upon which an order vacating, modifying in any material respect, revising in any material respect, or reversing the Final Order and Judgment becomes Final.  Any decision or proceeding, whether in this Court or any appellate court, solely with respect to attorneys' fees or litigation expenses shall not be grounds for termination of the Settlement.

14.      In the event the Settlement is terminated pursuant to Paragraph 13 above, then: (a) this Stipulation and the Settlement (including the Releases given pursuant to the terms of this Stipulation) shall be cancelled and shall become null and void and of no force and effect; (b) the Parties shall be restored to their respective positions immediately prior to the execution of this Stipulation; and (c) any and all amounts in the Escrow Account with respect to the Fees and Expenses Award, less any taxes or tax expenses paid, due, or owing on any interest earned on the monies deposited by the insurers for Evoqua and the Individual Defendants into the Escrow Account while on deposit in the Escrow Account, shall be promptly returned to the insurers for Evoqua and the Individual Defendants that funded such amounts.  In the event of such termination, this Stipulation shall not be admissible for any purpose in any proceedings before any court or tribunal and any judgments or orders entered by the Court in accordance with the terms of this

Stipulation shall be treated as vacated *nunc pro tunc*, including the factual statements contained in the WHEREAS clauses of this Stipulation.

## ATTORNEYS' FEES AND EXPENSES

15.    After executing the Term Sheet, Plaintiffs' Counsel and Defendants separately negotiated, with the aid of the Mediator, the Fees and Expenses Award to be paid to Plaintiffs' Counsel.  In recognition of the benefits conferred on Evoqua and its stockholders as a result of the Revised Practices, Evoqua and the Individual Defendants agreed not to oppose an application to the Court by Plaintiffs' Counsel for an award of attorneys' fees and expenses in the amount of $610,000 (after the Parties accepted a double-blind mediator's proposal for that amount of attorneys' fees and expenses), subject to Court approval.

16.    Evoqua and the Individual Defendants will cause their insurers to pay Court-approved attorneys' fees and expenses in the amount reflected in Paragraph 15 into an escrow account designated by Plaintiffs' Counsel (the "Escrow Account") within twenty (20) business days after the later of (a) the entry of the Preliminary Approval Order and (b) Plaintiffs' Counsel's furnishing of wire transfer information in a form reasonably acceptable to Evoqua and the insurers for Evoqua and the Individual Defendants, together with an IRS Form W-9, notwithstanding the existence of any timely filed objections to the Fees and Expenses Award, or potential for appeal from that award, or collateral attack on the Settlement or any part of it.

17.    The Fees and Expenses Award shall only be released from the Escrow Account following entry of the Final Order and Judgment by the Court and (if applicable) entry of a separate final order approving the Fees and Expenses Award.  If, after payment of the Fees and Expenses Award, the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the Fees and Expenses Award is reduced or reversed and such order reducing or reversing the award has become Final,

Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than thirty (30) calendar days after: (a) receiving from Evoqua's counsel notice of the termination of the Settlement, or (b) any order reducing or reversing the Fees and Expenses Award has become Final. Each law firm that comprises Plaintiffs' Counsel and that receives any portion of the Fees and Expenses Award is subject to this Court's jurisdiction for the purposes of enforcing this paragraph and other provisions relating to the Fees and Expenses Award.

18.    Payment of the Fees and Expenses Award shall constitute final and complete payment for Plaintiffs' Counsels' attorneys' fees and expenses that have been incurred or will be incurred in connection with the prosecution of the Consolidated Action and the Demand and the resolution of the claims alleged in the Consolidated Action and the Demand.  No Defendant (including Evoqua) shall be liable for or obligated to pay any fees, expenses, costs, or disbursements, or to incur any expense on behalf of, Plaintiffs, Merkwan, Plaintiffs' Counsel, or any counsel purporting to represent any other Current Evoqua Shareholder, directly or indirectly, in connection with the Consolidated Action, the Demand, or the Settlement, except as expressly provided for in this Stipulation.

19.    The Fees and Expenses Award shall be distributed amongst Plaintiffs' Counsel in a manner that they collectively agree in their sole discretion.  Neither Defendants nor Evoqua shall have any involvement, responsibility or liability whatsoever with respect to the allocation of any Fees and Expenses Award among Plaintiffs' Counsel, or any other counsel representing Plaintiffs, Merkwan, or any other Current Evoqua Shareholder or any other counsel asserting a right to recover any portion of the Fees and Expenses Award.  Any dispute regarding any allocation of fees or expenses among Plaintiffs' Counsel shall have no effect on the Settlement.

20.     Plaintiffs' Counsel intend to apply to the Court for service awards for Plaintiffs and Merkwan ("Plaintiff Service Awards") in an amount not exceeding $2,000 per each of the Plaintiffs and Merkwan to be paid solely from (and out of) the Fees and Expenses Award.  Defendants agree that they shall not oppose Plaintiffs Counsels' application to the Court for the Plaintiff Service Awards.

21.     It is not a condition of this Stipulation, the Settlement, the Final Order and Judgment, or the dismissal with prejudice of the Consolidated Action, that a particular amount of attorneys' fees and/or expenses be awarded by the Court to Plaintiffs' Counsel.  In the event that attorneys' fees and/or expenses are not awarded by the Court or are awarded in an amount that is unsatisfactory to Plaintiffs' Counsel, or in the event that an attorneys' fees and expenses award is vacated or reduced on appeal, this Stipulation and the Settlement, including the effectiveness of the Releases and the other obligations of the Parties under the Settlement, nevertheless shall remain in full force and effect.

## COOPERATION

22.     In addition to the actions specifically provided for in this Stipulation, the Parties agree to use commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws, regulations, or agreements, to consummate and make effective this Stipulation and the Settlement. The Parties and their attorneys agree to cooperate with one another in seeking the Court's approval of the Settlement and consummating the Settlement.

23.     Without further order of the Court, the Parties may agree to reasonable extensions of time not expressly set by the Court in order to carry out any of the provisions of this Stipulation.

24.     If, before the Court's approval of the Settlement becomes Final, any action was or is filed, re-filed, or otherwise prosecuted in any court asserting any Released Plaintiffs' Claims

against any of the Released Defendant Persons, Plaintiffs and Merkwan agree to cooperate with Defendants in taking any and all necessary actions to prevent, stay, or seek dismissal of such action and to oppose entry of any interim or final relief in any other litigation against any of the Parties that challenges the Settlement or otherwise involves a Released Plaintiffs' Claim.

## **STIPULATION NOT AN ADMISSION**

25.    Neither this Stipulation nor any act or omission in connection therewith is intended or shall be deemed to be a presumption, concession, or admission by: (a) any of the Defendants or any of the other Released Defendant Persons as to the validity of any claims, causes of action, or other issues raised, or which might be or have been raised, in the Consolidated Action or in any other litigation, or to be evidence of or constitute an admission of wrongdoing or liability by any of them, and each of them expressly denies any such wrongdoing or liability; or (b) Plaintiffs or Merkwan or any of the other Released Plaintiff Persons as to the infirmity of any claim or the validity of any defense, or to the amount of any damages.  The existence of the Stipulation, its contents, or any negotiations, statements, or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked, or otherwise used by any Person for any purpose in the Consolidated Action or otherwise, except as may be necessary to effectuate the Settlement.  This provision shall remain in force in the event that the Settlement is terminated for any reason whatsoever.  Notwithstanding the foregoing, any of the Released Persons may file the Stipulation or any judgment or order of the Court related hereto in any other action that has been or may be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## RULE 11

26.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Plaintiffs or Merkwan against the Released Defendant Persons with respect to the Released Plaintiffs' Claims.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure or any similar or related rule, law, or source of judicial authority relating to the institution, prosecution, defense, or settlement of the Consolidated Action.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process supervised and conducted by the Mediator, and reflect that the Settlement was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

## NO WAIVER

27.     Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions in this Stipulation by such other Party.

28.     No waiver, express or implied, by any Party of any breach or default in the performance by any other Party of its obligations under this Stipulation shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

## AUTHORITY

29.     This Stipulation will be executed by counsel to the Parties on behalf of their respective clients.  Each counsel represents and warrants that he or she has been duly authorized

and empowered to execute this Stipulation on behalf of such Party, and that it shall be binding on such Party in accordance with its terms.

## SUCCESSORS AND ASSIGNS

30.     This Stipulation is, and shall be, binding upon, and inure to the benefit of, the Parties and their respective agents, executors, administrators, heirs, successors, affiliates, and assigns; provided, however, that no Party shall assign or delegate its rights or responsibilities under this Stipulation without the prior written consent of the other Parties.

## BREACH

31.     In the event of any breach of this Stipulation, all of the Parties' rights and remedies at law, equity, or otherwise, are expressly reserved.

## GOVERNING LAW AND FORUM

32.     This Stipulation, the Settlement, and any and all disputes arising out of or relating in any way to this Stipulation or the Settlement, whether in contract, tort, or otherwise, shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to conflict of laws principles.  Any action relating to this Stipulation or the Settlement will be filed exclusively in the United States District Court for the Western District of Pennsylvania.  Each Party: (a) consents to personal jurisdiction in any such action (but no other action) brought in the Court; (b) consents to service of process by registered mail upon such Party and/or such Party's agent; (c) waives any objection to venue in the Court and any claim that the Court is an inconvenient forum; and (d) expressly waives, and agrees not to plead or make any claim, that any such action or proceeding is subject (in whole or in part) to a jury trial.

## REPRESENTATIONS AND WARRANTIES

33.     Plaintiffs, Merkwan, and Plaintiffs' Counsel represent and warrant that: (a) Plaintiffs and Merkwan are stockholders of Evoqua and were stockholders of Evoqua at all relevant

times for purposes of maintaining standing; (b) none of the Released Plaintiffs' Claims has been assigned, encumbered, or in any manner transferred in whole or in part by Plaintiffs or Merkwan; and (c) none of Plaintiffs, Merkwan, or Plaintiffs' Counsel will attempt to assign, encumber, or in any manner transfer, in whole or in part, any of the Released Plaintiffs' Claims.

34.     Each Party represents and warrants that the Party has made such investigation of the facts pertaining to the Settlement provided for in this Stipulation, and all of the matters pertaining thereto, and has been advised by counsel, as the Party deems necessary and advisable.

## ENTIRE AGREEMENT

35.     This Stipulation and the attached exhibits constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior or contemporaneous oral or written agreements, understandings, or representations.  All Parties agree that no representations, warranties, or inducements have been made to any Party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  All Parties further agree that they are not relying on any representations, warranties, or covenants that are not expressly contained and memorialized in this Stipulation or its exhibits.  All of the exhibits to this Stipulation are material and integral parts of it and are fully incorporated by reference.

## INTERPRETATION

36.     This Stipulation was mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

37.     Section and/or paragraph titles have been inserted for convenience only and will not be used in interpreting the terms of this Stipulation.

38.     The terms and provisions of this Stipulation are intended solely for the benefit of the Parties and their respective successors and permitted assigns, and it is not the intention of the

Parties to confer third-party beneficiary rights or remedies upon any other Person, except with respect to: (a) any attorneys' fees and expenses to be paid to Plaintiffs' Counsel pursuant to the terms of this Stipulation; and (b) the Released Persons who are not signatories to the Stipulation, who nonetheless are intended beneficiaries entitled to enforce those releases in accordance with their terms, but the consent of such third-party beneficiaries shall not be required to amend, modify, or terminate this Stipulation.

## AMENDMENTS

39.     This Stipulation may not be amended, changed, waived, discharged, or terminated (except as explicitly provided herein), in whole or in part, except by an instrument in writing signed by counsel to all of the Parties to this Stipulation, on behalf of each such Party.

## COUNTERPARTS

40.     This Stipulation may be executed in any number of manually signed, electronically signed and/or copied or emailed counterparts, each of which when delivered will be an original. This Stipulation will become effective when the counterparts have been signed by each of the Parties and delivered to the other Parties.  The executed signature page(s) from each counterpart may be joined together and attached and will constitute one and the same instrument.

## CONTINUING JURISDICTION

41.     The consummation of this Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain exclusive jurisdiction for the purpose of enforcing the terms of this Stipulation.

## NOTICE TO PARTIES

42.     If any Party is required to give notice to any other Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand or

courier delivery, or facsimile or email transmission with confirmation of receipt.  Notice shall be provided as follows:

If to Plaintiffs:                           The Brown Law Firm, P.C.
                                            Attn: Timothy Brown
                                            767 Third Avenue, Suite 2501 New York,
                                            New York 10017
                                            Telephone: (516) 922-5427

                                            The Rosen Law Firm, P.A.
                                            Attn: Phillip Kim
                                            275 Madison Avenue, 40th Floor
                                            New York, New York 10016
                                            Telephone: (212) 686-1060

If to Merkwan:                              Bragar Eagel & Squire, P.C.
                                            Attn: W. Scott Holleman
                                            810 Seventh Avenue, Suite 620
                                            New York, New York 10019
                                            Telephone: (646) 860-9449

If to Defendants:                           Fried, Frank, Harris, Shriver & Jacobson LLP
                                            Attn: Peter L. Simmons
                                            One New York Plaza
                                            New York, New York 10004
                                            Telephone: (212) 859-8000

                                            Paul, Weiss, Rifkind, Wharton &
                                            Garrison LLP
                                            Attn: Audra J. Soloway
                                            1285 Avenue of the Americas
                                            New York, New York 10019
                                            Telephone: (212) 373-3000

IN WITNESS WHEREOF, the Parties hereto have caused this Stipulation to be executed

by their duly authorized counsel, as of July 28, 2021.

Timothy Brown
Saadia Hashmi
THE BROWN LAW FIRM, P.C.
767 Third Avenue, Suite 2501
New York, New York 10017
Telephone: (516) 922-5427
tbrown@thebrownlawfirm.net
shashmi@thebrownlawfirm.net

Phillip Kim
Erica Stone
Nick Manningham
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
pkim@rosenlegal.com
estone@rosenlegal.com
nmanningham@rosenlegal.com

*Counsel for Plaintiffs*

W. Scott Holleman
Garam Choe
BRAGAR EAGEL & SQUIRE, P.C.
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (646) 860-9449
holleman@bespc.com
choe@bespc.com

*Counsel for Mike Merkwan*

Peter L. Simmons
Scott B. Luftglass

24

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
peter.simmons@friedfrank.com
scott.luftglass@friedfrank.com

*Counsel for Defendants Ronald C. Keating,
Benedict J. Stas, Martin Lamb, Judd A. Gregg,
Harbhajan Bhambri, Gary A. Cappeline, Brian
Hoesterey, Vinay Kumar, and Peter M. Wilver and
Nominal Defendant Evoqua Water Technologies
Corp.*


Audra J. Soloway
Brady M. Sullivan
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10009
Telephone: (212) 373-3000
asoloway@paulwiess.com
bmsullivan@paulwiess.com

*Counsel for Defendants AEA Investors LP, AEA
EWT Holdings LP, AEA EWT Holdings GP LLC,
AEA Investors Fund V LP, AEA Investors
Participant Fund V LP, AEA Investors QP
Participant Fund V LP, AEA Investors Fund V-A
LP, AEA Investors Fund VB LP, AEA Investors PF
V LLC, AEA Investors Partners V LP, and AEA
Management (Cayman) Ltd.*

# EXHIBIT A

## EXHIBIT A

**1.    BOARD COMPOSITION AND PRACTICES**

The Company currently has ten (10) members on its Board.  The Board shall pass a resolution to, within eighteen months of the approval of this settlement, replace an existing non-independent director with one new independent director, who shall meet the criteria for director independence set forth in Section 303A.02 of the Listed Company Manual of the New York Stock Exchange ("NYSE").

**2.    IMPROVEMENTS TO RISK MANAGEMENT AND THE CREATION OF A RISK COMMITTEE**

Evoqua shall adopt a resolution and draft a charter formally creating a management-level Risk Committee (the "Risk Committee"). The Risk Committee Charter shall require the following:

(a)    The Risk Committee shall consist of, at minimum, the General Counsel, Director of Ethics & Compliance, Director of Internal Audit, Director of Risk Management, Chief Financial Officer ("CFO"), and at least two other senior officers at the Company, at least one of whom shall have experience in identifying, assessing, and managing risk exposures of large, complex companies, including the risks represented by: (i) misreporting financial results and general prospects; (ii) the dissemination of misleading public statements by management; (iii) the failure of management to timely disclose material information to the public; and/or (iv) having ineffective internal controls.

(b)    The chair of the Risk Committee shall be the Director of Risk Management;

(c)    The Risk Committee shall meet at least quarterly;

(d)    The Risk Committee shall be primarily responsible for the Company's risk management policies and oversight of the operation of the Company's risk management framework.  Nothing herein shall abrogate any risk assessment responsibilities of the Board generally, or those responsibilities of any Board committee set forth set forth in the Board committee charters;

(e)    The Risk Committee shall be responsible for monitoring Evoqua's internal risk assessment, including risks reported internally by Evoqua employees.  The Risk Committee shall be responsible for identifying material risks relating to Evoqua's compliance with applicable laws and regulations, coordinating with the functional areas within the Company that have operational responsibility for managing particular risks (e.g., Internal Audit), and for coordinating with the Company's existing Disclosure Committee regarding any required or advisable public disclosure of identified actual or potential risks.  To ensure that the Risk Committee is sufficiently informed to effectively fulfill these responsibilities, the Risk Committee shall receive and review quarterly reports from the Company's Director of Ethics & Compliance.  The Risk Committee shall also have free access to management and Company employees for the purpose of identifying material risks relating to Evoqua's aforesaid compliance.  The Risk Committee shall prepare periodic written reports to the Audit Committee of the Board when material risks relating to Evoqua's compliance are identified, which shall include information on steps taken to address the identified

risks and specific recommendations regarding proposals for mitigating these risks, as well as (in consultation with the Disclosure Committee) relevant considerations, if applicable, relating to Evoqua's public disclosures of these risks;

(f)     The Risk Committee, in consultation with the Director of Ethics & Compliance, shall be responsible for reviewing compliance with Evoqua's Code of Ethics and Business Conduct (the "Code of Conduct").  In the event that the Risk Committee identifies a violation of the Code of Conduct is sufficiently material to trigger a potential disclosure obligation, the Risk Committee shall report the violation to the Disclosure Committee;

(g)     The Risk Committee shall report compliance issues that may have significant financial implications to the Audit Committee, and shall also report to the Disclosure Committee any compliance issues (including risks relating to compliance issues) that are sufficiently material to trigger a potential disclosure obligation;

(h)     The Risk Committee shall have the authority to retain separate and independent advisors or counsel to aid in fulfilling its responsibilities under its charter, which shall be at Evoqua's expense;

(i)     The Risk Committee shall provide the Audit Committee with an annual summary of the matters it addressed in the prior year and of its key findings and/or recommendations regarding any identified issues about the effectiveness of Evoqua's risk management, including applicable internal controls.  In consultation with the Audit Committee, the Risk Committee shall implement changes to Evoqua's policies and internal controls as necessary.  The summary shall also include the Risk Committee's proposed agenda for the coming year, with special focus on the reports and recommendations supplied by the Director of Ethics & Compliance;

(j)     The Risk Committee shall receive a quarterly summary of the issues raised by and the disposition and any remedial action taken, and shall provide feedback, with respect to: (i) any whistleblower/Compliance Helpline reports (detailed below), (ii) areas of potential weakness or concern identified by the Company's Internal Audit, and (iii) areas of potential weakness or concern identified by the Company's outside independent auditors.  Any indications or allegations of improper sales or accounting practices shall be escalated to the Risk Committee promptly, and not just in a quarterly summary;

(k)     The Risk Committee shall coordinate with the Ethics & Compliance group within Evoqua, which oversees the maintenance of the Company's Compliance Helpline and website portal, which are staffed by an independent company.  The Risk Committee shall ensure that all anonymous whistleblower complaints are provided to the Company's Audit Committee and that all complaints are completely and fully investigated and that any appropriate remedial action is taken based on the results of the investigation.  The Risk Committee shall ensure that the Company's existing non-retaliation policies are complied with in order to protect any Evoqua employee who reports a complaint via the Compliance Helpline, website, or by other means.

3.    **ENHANCEMENTS TO THE DIRECTOR OF ETHICS & COMPLIANCE POSITION**

The responsibilities and duties of Evoqua's Director of Ethics & Compliance shall include the following:

(a)    Working with the Risk Committee to evaluate and define the goals of the Company's ethics and compliance program in light of trends and changes in laws that may affect Evoqua's compliance with laws relating to the Company's risk exposure;

(b)    Advising Evoqua's Risk Committee and acting as the liaison between the Risk Committee, the Disclosure Committee, Evoqua's executive officers, and the Audit Committee, in which capacity the Ethics & Compliance Manager shall (i) be primarily responsible for assessing organizational risk for misconduct or noncompliance with Evoqua's Code of Conduct , (ii) report material risks relating to compliance issues to the Risk Committee , and materials issues relating to financial matters to Internal Audit, within three (3) business days of identification of these risks, and (iii) make written recommendations for further evaluation and/or remedial action within deadlines established by the Risk Committee;

(c)    Providing quarterly written reports to the Audit Committee evaluating, identifying areas of weakness or concern, reporting on investigations conducted, and following up on remediation for areas of weakness or concerns that may have been identified in earlier periods;

(d)    In coordination with the Director of Internal Audit, providing a written report to the Audit Committee promptly upon receipt of any whistleblower complaint or report made through the Company's Compliance Helpline or otherwise alleging potential financial impropriety, together with a description of what management plans to do to investigate the allegations and what internal or external resources will be used to conduct the inquiry or address the concerns;

(e)    Providing at each regularly-scheduled Audit Committee meeting a summary of the types of whistleblower complaints received by the Company's Compliance Helpline or otherwise, as well as any material information resulting from any internal investigation into such complaints;

(f)    Working with the Director of Internal Audit to assist in the assessment of internal risk;

(g)    Working with the Director of Internal Audit and the Audit Committee to identify areas of ethics and compliance to be tested from time to time as part of the internal audit function and to evaluate the adequacy of Evoqua's internal controls over compliance and develop proposals for improving these controls.

4.    **ADDITIONS TO THE COMPENSATION COMMITTEE CHARTER**

In determining, setting, or approving annual compensation arrangements for Evoqua's executive officers, the Compensation Committee shall take into account the particular executive's performance as it relates to both legal compliance and compliance with the Company's internal policies and procedures. Only executives who sign the annual certification detailed herein shall be eligible for base performance increases.

**5.      EMPLOYEE TRAINING IN RISK ASSESSMENT AND COMPLIANCE**

Evoqua shall institute biennial training (a) to all employees regarding compliance with Evoqua's Code of Conduct and other manuals or policies established by Evoqua concerning legal or ethical standards of conduct to be observed in connection with work performed for Evoqua ("Evoqua's Policies"), and (b) to the relevant employee population regarding risk assessment and compliance with the tenets of Generally Accepted Accounting Principles ("GAAP") applicable to the employee's functional area of responsibility.  The training in (a) and (b) may occur in alternate years, as appropriate to the person's functional area of responsibility, except both items of training shall be provided to newly hired employees promptly.

Upon completion of training, the person receiving the training shall provide a written certification as to his or her receipt and understanding of the obligations under Evoqua's Policies. Each written certification shall be maintained by the Director of Ethics & Compliance for a period of ten (10) years from the date it was executed.  Employees shall also be required to sign annually their acknowledgement of compliance with Evoqua's Code of Conduct.

**6.      DIRECTOR EDUCATION**

Evoqua shall amend its Corporate Governance Guidelines as necessary to set a goal that each member of the Board aim to attend, on average, four (4) hours per year of continuing education programs designed for directors of publicly-traded companies.  Such training shall include coverage of rules and regulations regarding public disclosures, GAAP, the Sarbanes Oxley Act, standards governing internal controls over financial reporting, including those promulgated in the Committee of Sponsoring Organizations of the Treadway Commission Framework, corporate governance, assessment of risk, compliance auditing, and reporting requirements for publicly-traded corporations.

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE EVOQUA WATER TECHNOLOGIES CORP. DERIVATIVE LITIGATION | Case No. 2:19-cv-00410-MPK |

### [PROPOSED] ORDER REGARDING NOTICE AND PROCEDURES FOR PROPOSED SETTLEMENT

The plaintiffs in this consolidated derivative litigation (the "Consolidated Action"), Dallas Torgersen and Robert Hyams (together, "Plaintiffs"), who purport to sue on behalf of Evoqua Water Technologies Corp. ("Evoqua" or the "Company"), together with additional purported Evoqua shareholder Mike Merkwan ("Merkwan"), who made a litigation demand on Evoqua's Board of Directors, have reached an agreement with the Defendants (defined below), subject to Court approval pursuant to Rule 23.1 of the Federal Rules of Civil Procedure (the "Federal Rules"), to settle this action.  They have entered into a Stipulation and Agreement of Settlement dated July 28, 2021 (the "Stipulation") with: (a) defendants Ronald C. Keating, Benedict J. Stas, Martin Lamb, Judd A. Gregg, Harbhajan Bhambri, Gary A. Cappeline, Brian Hoesterey, Vinay Kumar, and Peter M. Wilver (collectively, the "Individual Defendants"); (b) defendants AEA Investors LP ("AEA"), AEA EWT Holdings LP, AEA EWT Holdings GP LLC, AEA Investors Fund V LP, AEA Investors Participant Fund V LP, AEA Investors QP Participant Fund V LP, AEA Investors Fund V-A LP, AEA Investors Fund V-B LP, AEA Investors PF V LLC, AEA Investors Partners V LP, and AEA Management (Cayman) Ltd. (collectively, the "AEA Defendants"); and (c) nominal defendant Evoqua (together with the Individual Defendants and the AEA Defendants, the "Defendants") that sets forth the terms and conditions for the proposed settlement (the

"Settlement") and contemplates the implementation of various enhanced corporate governance procedures at Evoqua in return for the dismissal with prejudice of this action.

Plaintiffs have made an application, pursuant to Rule 23.1 of the Federal Rules, for an order providing for notice of the proposed settlement to be provided to Current Evoqua Shareholders and for a hearing to be set at which the Court will consider whether to approve the Settlement in accordance with the Stipulation.

Having reviewed Plaintiffs' motion and the papers filed and arguments made in connection with it, and having reviewed the Stipulation and its attached Exhibits, the Court makes the following ORDER:

1.    **Definitions**:  Unless otherwise defined herein, the capitalized terms used in this Order shall have the same meanings as they have in the Stipulation.

2.    **Preliminary Approval of the Settlement**:  The Court preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable, and adequate to Evoqua and its stockholders, subject to further consideration at the Settlement Hearing to be conducted as described below.

3.    **Settlement Hearing**:  A hearing (the "Settlement Hearing") shall be held before this Court on _____, 2021 [at least 55 days after this Order is entered], at _____,  at the United States Courthouse for the Western District of Pennsylvania, 700 Grant Street, Courtroom 9C, Pittsburgh, Pennsylvania 15219, or via telephone or video-conference (in the discretion of the Court), for the following purposes: (a) to determine whether the proposed Settlement is fair, reasonable, and adequate to the Company and its stockholders, and should be finally approved by the Court; (b) to determine whether the Court should enter a Final Order and Judgment substantially in the form attached as Exhibit D to the Stipulation, dismissing this case with

prejudice and extinguishing and releasing the Released Claims; (c) to determine whether Plaintiffs' Counsel's application for attorneys' fees and expenses  (as set forth in Paragraph 15 of the Stipulation) (the "Application") and Plaintiff Service Awards (as set forth in Paragraph 20 of the Stipulation) should be approved; (d) to hear and consider any objections to the proposed Settlement, the Application, and/or Plaintiff Service Awards; and (e) to rule on other such matters as the Court may deem appropriate.

4.      The Court reserves the right to adjourn the date of the Settlement Hearing and to modify any other dates set forth in this Order without further notice to Current Evoqua Shareholders, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may decide to hold the Settlement Hearing by telephone or video-conference without further notice to Current Evoqua Shareholders.  Any Current Evoqua Shareholder (or his, her, or its counsel) who wishes to appear at the Settlement Hearing should consult the Court's docket and/or Evoqua's corporate website for any changes in the date, time, or format of the hearing.

5.      The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Current Evoqua Shareholders.

6.      **Approval of Form and Content of Notice**:  The Court: (a) approves, as to form and content, the Notice of Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear (the "Notice"), attached to the Stipulation as Exhibit C; and (b) finds that the disclosure of the terms of the Settlement contained in the Notice and the distribution of the Notice in the manner and form set forth in this Order meets the requirements of Rule 23.1 of the Federal Rules, the United States Constitution, and any other applicable law, and shall constitute reasonable and sufficient notice to all Persons entitled to notice.

7.     **Manner of Giving Notice**:  No later than ten (10) calendar days after entry of this Order, notice of the Settlement shall be given in the following manner:  (a) posting of this Order, the Notice, and the Stipulation (including its exhibits) on the investor relations section of Evoqua's corporate website, which will be maintained through the date of the Settlement Hearing; (b) issuance by Evoqua of a press release linking to the Notice on a nationally recognized newswire (*e.g.*, PR Newswire, BusinessWire); and (c) disclosure of the terms of the Settlement by Evoqua through the filing of a Form 8-K with the SEC, which filing shall include a copy of the Notice and shall provide a link to the investor relations page on Evoqua's corporate website where the Notice and the Stipulation may be viewed.  At least ten (10) calendar days prior to the Settlement Hearing, counsel for Evoqua shall file with the Court appropriate proof of compliance with the Notice procedures set forth in this Order.

8.     **Appearance and Objections at Settlement Hearing**:  Any Current Evoqua Shareholder may file a written objection to the Settlement or the Application (including Plaintiff Service Awards), and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the Application, and/or Plaintiff Service Awards should not be approved.  However, unless otherwise directed by the Court for good cause shown, no Person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement unless that Person has filed a written objection with the Clerk of the Court and served (by hand, first class mail, or overnight delivery service) copies of such objection on Plaintiffs' Counsel and Defendants' counsel at the addresses set forth below, with a copy emailed to each of the counsel at the email addresses set forth below, no later than twenty-one (21) calendar days prior to the Settlement Hearing:

| Plaintiffs' Counsel | Defendants' Counsel |
|---|---|

Plaintiffs' Counsel

The Brown Law Firm, P.C.
Attn: Timothy Brown
767 Third Avenue, Suite 2501
New York, New York 10017
Telephone: (516) 922-5427
tbrown@thebrownlawfirm.com

The Rosen Law Firm, P.A.
Attn: Phillip Kim
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
pkim@rosenlegal.com

Bragar Eagel & Squire, P.C.
Attn: W. Scott Holleman
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (646) 860-9449
holleman@bespc.com

Defendants' Counsel

Fried, Frank, Harris, Shriver & Jacobson
LLP
Attn: Peter L. Simmons
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
peter.simmons@friedfrank.com

Paul, Weiss, Rifkind, Wharton &
Garrison LLP
Attn: Audra J. Soloway
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
asoloway@paulweiss.com

9.      Any objections, filings, and other submissions:  (a) must identify the case name and

docket number, *In re Evoqua Water Technologies Corp. Derivative Litigation*, Case No. 2:19-cv-

00410-MPK (W.D. Pa.); (b) must state the name, address, and telephone number of the objector

or, if represented by counsel, the name of the objector and the name, address, and telephone

number of his, her, or its counsel; (c) must be signed by the objector or his, her or its counsel

appearing on the objector's behalf; (d) must contain a specific, written statement of the objection(s)

and the specific reason(s) for the objection(s), including any legal and evidentiary support the

objector wishes to bring to the Court's attention, and if the objector has indicated that he, she, or

it intends to appear at the Settlement Hearing, the identity of any witnesses the objector may call

to testify and any exhibits the objector intends to introduce into evidence at the hearing; and (e)

must include documentation sufficient to prove that the objector owned shares of Evoqua common

stock as of July 28, 2021 and contain a statement that the objector continues to hold such shares as of the date of filing of the objection and will continue to hold those shares as of the date of the Settlement Hearing.  Documentation establishing ownership of Evoqua common stock may consist, for example, of copies of monthly brokerage account statements (but with account numbers, home address and unrelated stock holdings redacted, consistent with Local Civil Rule 5.2(D)), or an authorized statement from the objector's broker or investment advisor attesting to the objector's beneficial ownership of Evoqua stock and containing information similar to that found in an account statement.

10.     Unless the Court orders otherwise, any Person who or which does not make his, her, or its objection in the manner provided herein shall:  (a) be deemed to have forever waived his, her, or its right to object to any aspect of the proposed Settlement and the Application (including Plaintiff Service Awards); (b) be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement or the Application (including Plaintiff Service Awards); and (c) be deemed to have waived and forever be barred and foreclosed from being heard in this or any other proceeding with respect to any matters concerning the Settlement or the Application (including Plaintiff Service Awards).

11.     All Current Evoqua Shareholders and any other Persons owning shares of Evoqua common stock as of the date of the Settlement Hearing shall be bound by all determinations and judgments in the Consolidated Action concerning the Settlement, the Application (including Plaintiff Service Awards), whether favorable or unfavorable to stockholders.  If the Court approves the Settlement, all Current Evoqua Shareholders and any other Persons owning shares of Evoqua common stock as of the date of the Settlement Hearing will be bound by the Settlement, including,

but not limited to, the release of the Released Claims provided for in the Stipulation, and by any judgment or determination of the Court affecting Current Evoqua Shareholders.

12.    **Stay and Temporary Injunction**:  Until otherwise ordered by the Court, the Court stays all proceedings in the Consolidated Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.  Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Plaintiffs, Merkwan, and all other Current Evoqua Shareholders from commencing, instituting, or prosecuting any of the Released Plaintiffs' Claims against any of the Released Defendant Persons in any forum.

13.    **No Admissions**:  Neither this Order nor any act or omission in connection therewith is intended or shall be deemed to be a presumption, concession, or admission by:  (a) any of the Defendants or any of the other Released Defendant Persons as to the validity of any claims, causes of action, or other issues raised, or which might be or have been raised, in the Consolidated Action or in any other litigation, or to be evidence of or constitute an admission of wrongdoing or liability by any of them, and each of them expressly denies any such wrongdoing or liability; or (b) Plaintiffs or Merkwan or any of the other Released Plaintiff Persons as to the infirmity of any claim or the validity of any defense, or to the amount of any damages.  The existence of the Stipulation, its contents, or any negotiations, statements, or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked, or otherwise used by any Person for any purpose in the Consolidated Action or otherwise, except as may be necessary to effectuate the Settlement.  This provision shall remain in force in the event that the Settlement is terminated for any reason whatsoever.  Notwithstanding the foregoing, any of the Released Persons may file the Stipulation or any judgment or order of the Court in any other action that has been or may be brought against them, in order to support any and all defenses or counterclaims

based on *res judicata*, collateral estoppel, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.     **Fees and Expenses Payment**:  The Fees and Expenses Award, plus any and all interest earned on that amount while on deposit in Plaintiffs' Counsel's Escrow Account, shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as the contents of the Escrow Account shall be disbursed pursuant to the Stipulation and/or further order(s) of the Court.

15.     **Termination of Settlement**:  If the Settlement is terminated pursuant to Paragraph 13 of the Stipulation, then (a) this Order shall be rendered null and void and of no force and effect, to the extent provided by and in accordance with the Stipulation, and shall be vacated and, in such event, all orders entered and releases delivered in connection with this Order shall be cancelled and shall be null and void and of no force and effect to the extent provided by and in accordance with the Stipulation; and (b) the Parties shall be restored to their respective positions in the Consolidated Action immediately prior to the execution of the Stipulation.

16.     **Supporting Papers**:  Plaintiffs shall file and serve their motion for final approval of the Settlement and the Application (including Plaintiff Service Awards) no later than thirty-five (35) calendar days prior to the Settlement Hearing.  Reply papers in response to any objections (if any) and/or in support of the Settlement and the Application shall be filed and served no later than seven (7) calendar days prior to the Settlement Hearing.

17.     **Retention of Jurisdiction**:  The Court retains jurisdiction to consider all further applications arising out of or connected with the Settlement.

IT IS SO ORDERED.

DATED:  _____

THE HONORABLE MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

9

# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE EVOQUA WATER TECHNOLOGIES CORP. DERIVATIVE LITIGATION | Case No. 2:19-cv-00410-MPK |

## NOTICE OF PROPOSED SETTLEMENT OF DERIVATIVE ACTION, SETTLEMENT HEARING, AND RIGHT TO APPEAR

***The U.S. District Court for the Western District of Pennsylvania authorized this Notice. This is not a solicitation from a lawyer.***

TO: ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF SHARES OF COMMON STOCK OF EVOQUA WATER TECHNOLOGIES CORP. ("EVOQUA" OR THE "COMPANY") AS OF THE CLOSE OF BUSINESS ON JULY 28, 2021 ("EVOQUA SHAREHOLDERS").

## PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS WILL BE AFFECTED BY THIS LITIGATION.

This Notice relates to a proposed settlement (the "Settlement") of the above-captioned, consolidated derivative action (the "Consolidated Action" or the "Derivative Action"), which was brought by certain Evoqua stockholders on behalf of and for the benefit of Evoqua in the U.S. District Court for the Western District of Pennsylvania (the "Court"). The complete terms of the Settlement, which remains subject to the final approval of the Court, are set forth in a Stipulation and Agreement of Settlement, dated July 28, 2021 (the "Stipulation"), entered into between and among (a) plaintiffs Dallas Torgersen ("Torgersen") and Robert Hyams ("Hyams" and with Torgersen, "Plaintiffs"), derivatively on behalf of Evoqua; (b) Evoqua shareholder Mike Merkwan ("Merkwan"), who made a litigation demand (the "Demand") on Evoqua's Board of Directors (the "Board") as described below; (c) defendants Ronald C. Keating, Benedict J. Stas, Martin Lamb, Judd A. Gregg, Harbhajan Bhambri, Gary A. Cappeline, Brian Hoesterey, Vinay Kumar, and Peter M. Wilver (collectively, the "Individual Defendants"); (d) defendants AEA Investors LP ("AEA"), AEA EWT Holdings LP, AEA EWT Holdings GP LLC, AEA Investors Fund V LP, AEA Investors Participant Fund V LP, AEA Investors QP Participant Fund V LP, AEA Investors Fund V-A LP, AEA Investors Fund V-B LP, AEA Investors PF V LLC, AEA Investors Partners V LP, and AEA Management (Cayman) Ltd. (collectively, the "AEA Defendants"); and (e) nominal defendant Evoqua (together with the Individual Defendants and the AEA Defendants, the "Defendants"). Plaintiffs, Merkwan, and Defendants are collectively referred to as the "Parties."

All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation. A copy of the Stipulation is available for review on Evoqua's corporate website, http://www.evoqua.com.

Because the Consolidated Action was brought as a derivative action on behalf of and for the benefit of Evoqua, the benefits from the Settlement will go directly to Evoqua. There are no payments or other benefits to be paid directly to stockholders – only benefits to the Company – and thus there is no proof of claim form for Evoqua shareholders to submit in connection with the Settlement.

## I.   PURPOSE OF THE NOTICE

1.      By order of the Court, you are being provided this Notice of the proposed Settlement of the Consolidated Action. The purpose of this Notice is to inform Current Evoqua Shareholders about: (a) the existence of the Consolidated Action; (b) the proposed Settlement, and the terms and conditions set forth in the Stipulation; (c) Current Evoqua Shareholders' rights with respect to the proposed Settlement and with respect to Plaintiffs' Counsel's application for an award of attorneys' fees and litigation expenses (as set forth in Paragraph 15 of the Stipulation and described below) (the "Application") and service awards for Plaintiffs ("Plaintiff Service Awards"); and (d) the hearing that the Court will hold on _____, 2021, at _____, at the United States Courthouse for the Western District of Pennsylvania, 700 Grant Street, Courtroom 9C, Pittsburgh, Pennsylvania 15219, or via telephone or video-conference (in the discretion of the Court).

2.      At the Settlement Hearing, the Court will, among other things: (a) determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation, is fair, reasonable, and adequate to Evoqua and its stockholders, and should be finally approved by the Court; (b) determine whether the Court should enter a final order and judgment (the "Final Order and Judgment") substantially in the form attached as Exhibit D to the Stipulation, dismissing the Consolidated Action with prejudice and extinguishing and releasing the Released Claims; (c) determine whether the Application and Plaintiff Service Awards should be approved; (d) hear and consider any objections to the proposed Settlement, the Application, and/or Plaintiff Service Awards; and (e) rule on any other such matters as the Court may deem appropriate. The Court reserves the right to adjourn the date of the Settlement Hearing and to modify any other dates set forth in this Notice without further notice to Evoqua shareholders.

3.      This Notice contains important information regarding your rights. Your rights may be affected by these legal proceedings. Plaintiffs (derivatively on behalf of Evoqua), Merkwan, and Defendants have agreed upon the terms to settle the above-referenced litigation. If the Court approves the proposed Settlement, you will be forever barred from contesting the approval of the Settlement and from pursuing, derivatively on behalf of the Company, the Released Plaintiffs' Claims (as defined below) as against the Released Defendant Persons (as defined below).

## II.   BACKGROUND OF THE ACTION

THE FOLLOWING DESCRIPTION OF THE LITIGATION AND THE SETTLEMENT HAS BEEN PREPARED BY COUNSEL FOR THE PARTIES. THE COURT HAS MADE NO FINDINGS WITH RESPECT TO SUCH MATTERS, AND THIS NOTICE IS NOT AN ADMISSION BY ANY PARTY OF THE FACTS IN THIS MATTER OR AN EXPRESSION OR STATEMENT BY THE COURT OF FINDINGS OF FACT.

4.     On November 1, 2017, Evoqua commenced an initial public offering of its common stock (the "IPO") pursuant to which its stock became publicly traded.

5.     On March 15, 2018, Evoqua commenced a secondary public offering of its common stock (the "SPO").

6.     On November 6, 2018, a putative securities class action complaint was filed in the United States District Court for the Southern District of New York, later re-titled as *In re Evoqua Water Technologies Corp. Securities Litigation*, No. 1:18-cv-10320, brought on behalf of certain purchasers of Evoqua common stock (the "Securities Class Action").

7.     On April 3, 2019, the lead plaintiffs in the Securities Class Action filed an amended complaint against Evoqua, certain of Evoqua's officers and directors, AEA and certain of its affiliates, and the underwriters of the IPO and the SPO, asserting claims for violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").  The amended complaint alleged that certain defendants made materially false and misleading statements and omissions about Evoqua's business, including in the offering documents for the IPO and the SPO (the "Offering Materials"), and that the price of Evoqua common stock was artificially inflated during the period from the date of the IPO through the date of Evoqua's October 30, 2018 announcement of its preliminary financial results for the fourth quarter and full fiscal year 2018.

8.     On April 10, 2019, plaintiff Torgersen filed a shareholder derivative action in this Court on behalf of nominal defendant Evoqua, and against the Individual Defendants, captioned *Torgersen v. Keating, et al.*, Case No. 2:19-cv-00410 (the "*Torgersen* Action").  The *Torgersen* Action asserted claims arising from substantially similar facts at issue in the Securities Class Action, and asserted claims under the Exchange Act as well as claims for alleged breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement and waste of corporate assets.

9.     On June 14, 2019, in light of the similarities between the subject matter and factual allegations in the *Torgersen* Action and the Securities Class Action, and in the interests of judicial economy, conservation of time and resources, and orderly management of those actions, the parties to the *Torgersen* Action entered into a stipulation staying the *Torgersen* Action pending the resolution of the defendants' anticipated motion to dismiss in the Securities Class Action (the "Initial Stay").  The Court entered an Order imposing the Initial Stay on June 14, 2019.

10.     On February 6, 2020, Merkwan sent the Demand to Evoqua's Board, requesting that the Board investigate and pursue, on behalf of the Company, causes of action for breaches of fiduciary duties against AEA and certain of the Company's officers and directors arising from substantially similar facts at issue in the *Torgersen* Action and the Securities Class Action. Thereafter, Merkwan and the Board agreed to hold the Demand in abeyance pending the resolution of the defendants' anticipated motion to dismiss in the Securities Class Action (the "Initial Abeyance Agreement").

11.     On March 30, 2020, the court in the Securities Class Action granted in part and denied in part the defendants' motion to dismiss, thereby triggering the lifting of the Initial Stay.

Specifically, the court dismissed the Exchange Act claims but sustained the Securities Act claims arising out of the IPO and the SPO (except as against certain of the executive defendants).

12.     On July 27, 2020, plaintiff Hyams filed a shareholder derivative action in this Court, captioned *Hyams v. Keating, et al.*, Case No. 2:20-cv-01122 (the "*Hyams* Action"). The complaint in the *Hyams* Action alleged substantially similar facts and made substantially similar claims as the *Torgersen* Action against the Individual Defendants, and added as defendants the AEA Defendants.

13.     On August 18, 2020, the parties to the *Torgersen* Action and the *Hyams* Action filed a joint stipulation requesting that the Court: (a) consolidate the *Torgersen* Action and the *Hyams* Action; (b) designate The Rosen Law Firm, P.A. and The Brown Law Firm, P.C. as co-lead counsel representing Plaintiffs in the Consolidated Action; and (c) in the interests of judicial economy, conservation of time and resources, and orderly management of those actions, stay the *Torgersen* Action and the *Hyams* Action pending the resolution of the anticipated motions for summary judgment to be filed in the Securities Class Action (the "Second Stay"). Pursuant to the terms of the Second Stay, Plaintiffs were also to be promptly advised of and permitted to participate in any mediation proceedings and formal settlement talks in the Securities Class Action, and to be given copies of the written discovery materials produced by any Defendant in the Securities Class Action. On September 16, 2020, the Court entered an order imposing the Second Stay.

14.     On September 1, 2020, Evoqua, Merkwan, and the Board agreed to continue holding the Demand in abeyance pending the resolution of the anticipated motions for summary judgment to be filed in the Securities Class Action (the "Second Abeyance Agreement").

15.     In late 2020, the parties to the Securities Class Action began discussions about retaining an experienced mediator to see if the parties might be able to resolve that case, and ultimately retained Greg Danilow, Esq. (the "Mediator") of Phillips ADR, a nationally recognized alternative dispute firm with significant experience in mediating securities class actions and other complex litigations. In accordance with the Second Stay and the Second Abeyance Agreement, Plaintiffs and Merkwan were invited to and did participate in that meditation process.

16.     On February 27, 2021, Plaintiffs sent Defendants a settlement demand that included a proposal for extensive changes to the Company's corporate governance practices. On March 12, 2021, Merkwan separately sent Defendants a settlement demand that included a proposal for extensive changes to the Company's corporate governance practices.

17.     In connection with the mediation process, Plaintiffs, Merkwan, and Evoqua and the Individual Defendants prepared and exchanged comprehensive mediation statements addressing issues relating to liability and damages.

18.     In advance of the initial mediation session, and in accordance with the Second Stay, Defendants also produced to Plaintiffs and Merkwan more than 750,000 documents that they had produced in the Securities Class Action.

19.     On March 19, 2021, Plaintiffs, Merkwan, and Evoqua and the Individual Defendants participated in a full-day mediation session via video-conference, which did not result

in the Parties agreeing to a settlement. Over the next seven and a half weeks following the mediation session, Plaintiffs, Merkwan, and the Defendants continued to engage in settlement negotiations, including the exchange of written proposals for certain corporate governance changes that Evoqua might adopt in response to Plaintiffs' and Merkwan's claims.

20.     Following extensive negotiations, and with the aid of the Mediator, the Parties were ultimately able to reach an agreement in principle to settle the Consolidated Action and resolve the Demand and negotiated and executed a term sheet (the "Term Sheet") on May 10, 2021, which memorialized the material terms (subject to the Court's approval) of the Parties' settlement. In particular, the Term Sheet sets forth, among other things, the Parties' binding agreement to settle all claims asserted on behalf of Evoqua against all Defendants in the Consolidated Action and the Demand in exchange for the Board adopting and implementing certain corporate governance revised practices.

21.     On _____, 2021, the Court entered an Order that, among other things, authorized this Notice to be provided to Current Evoqua Shareholders; established the procedures for the Court's final consideration of the Settlement; and scheduled the Settlement Hearing to consider whether to grant final approval of the Settlement, the Application, and Plaintiff Service Awards.

## III.    TERMS OF THE PROPOSED SETTLEMENT

22.     The principal terms, conditions, and other matters that are part of the Settlement, which is subject to final approval by the Court, are summarized below. However, this summary should be read in conjunction with, and is qualified in its entirety by reference to, the Stipulation, which is available on Evoqua's corporate website, http://www.evoqua.com.

23.     In consideration of the full settlement, satisfaction, compromise, and release of the Released Plaintiffs' Claims (as defined below) against the Released Defendant Persons (as defined below), the dismissal with prejudice of the Consolidated Action, and the resolution of all claims set forth in the Demand, the Board shall adopt resolutions, amend committee Charters, or adopt corporate governance guidelines to implement the Revised Practices, which are set forth in full in Exhibit A to the Stipulation, to the extent the Board did not already implement any of the Revised Practices after the Parties executed the Term Sheet, within thirty days of the date of the entry of the Final Order and Judgment. The Revised Practices include:

- The Board shall pass a resolution, within eighteen months of the date of the entry of the Final Order and Judgment, to replace one existing non-independent director with one new independent director, who shall meet the criteria for director independence set forth in Section 303A.02 of the Listed Company Manual of the New York Stock Exchange.

- Evoqua shall adopt a resolution and draft a charter formally creating a management-level Risk Committee, which shall be primarily responsible for Evoqua's risk management policies and oversight of the operations of Evoqua's risk management framework.

- The responsibilities and duties of Evoqua's Director of Ethics & Compliance shall be enhanced.

- Additions shall be made to Evoqua's Compensation Committee Charter relating to the determination, setting, and approval of compensation arrangements for Evoqua's executive officers.

- Evoqua will institute biennial training to employees in risk assessment and compliance.

- Evoqua shall amend its Corporate Governance Guidelines as necessary to set a goal that each member of the Board aim to attend, on average, four hours per year of continuing education programs designed for directors of publicly traded companies.

24.     The Revised Practices shall be maintained until at least five years following the Effective Date.  Evoqua and the Board acknowledge and agree that the filing, pendency, and settlement of the Consolidated Action and the Demand constitute the primary cause of the Company's decision to adopt and implement the Revised Practices, which are new and beneficial to Evoqua and its stockholders.

## IV.     REASONS FOR THE SETTLEMENT

25.     The Parties have determined that it is desirable and beneficial that this litigation is fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and Plaintiffs' Counsel believe that the settlement is in the best interest of the Parties and Evoqua shareholders.

26.     Plaintiffs and Merkwan maintain that they have:  (i) thoroughly considered the facts and law underlying their claims; and (ii) weighed the benefits the Settlement will confer on Evoqua and its stockholders against the risks and delay of continued litigation.  Based on those analyses, Plaintiffs and Merkwan determined that it is in the best interests of Evoqua and its stockholders that the Consolidated Action and the Demand be fully and finally resolved in the manner and upon the terms and conditions set forth in the Stipulation, and that these terms and conditions are fair, reasonable, adequate, and in the best interests of Evoqua.

27.     Defendants have denied and continue to deny the allegations of wrongdoing, liability, and violation of any laws and the existence of any damages asserted against them. Defendants believe that they have substantial defenses to the claims alleged.  Defendants have further asserted that, at all relevant times, they acted in good faith, and in a manner they reasonably believed to be in the best interests of Evoqua and its stockholders.  Nevertheless, Defendants have concluded that further litigation would be time consuming and expensive.  After weighing the costs, disruption, and distraction of continued litigation, they have determined that, in order to eliminate the risk, burden, and expense of further litigation, and without admitting any wrongdoing or liability whatsoever, the litigation should be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

## V.    RELEASES

28.    If the Settlement is approved, the Court will enter the Final Order and Judgment. Pursuant to the Final Order and Judgment, upon the Effective Date of the Settlement, the Consolidated Action will be dismissed with prejudice and the following releases will occur:

29.    **Release of Claims by Plaintiffs, Merkwan, Evoqua and Evoqua Shareholders**: Upon the Effective Date, Plaintiffs, Merkwan and Evoqua shall, and each Current Evoqua Shareholder shall be deemed to have by operation of law and the Final Order and Judgment to, fully, finally, and forever release, relinquish and discharge each and all of the Released Defendant Persons, and covenant not to sue any Released Defendant Person, in each instance with respect to any Released Plaintiffs' Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Plaintiffs' Claims against the Released Defendant Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or the Final Order and Judgment.  In addition, Plaintiffs and Merkwan agree not to initiate, prosecute, assist in, or facilitate the prosecution of any other claims arising out of the facts giving rise to the Consolidated Action or the Demand.

"Released Plaintiffs' Claims" means all claims or causes of action (including Unknown Claims) against any of the Released Defendant Persons that (i) were asserted or could have been asserted derivatively in the Derivative Action or the Demand; (ii) would have been barred by *res judicata* had the Derivative Action been fully litigated to final judgment; (iii) that have been, could have been, or could in the future be, asserted derivatively in any forum or proceeding or otherwise against any of the Released Defendant Persons that concern, are based upon, involve, or arise out of or relate to any of the subject matters, allegations, transactions, facts, events, occurrences, disclosures, representations, statements, omissions alleged, acts, failures to act, alleged mismanagement, misconduct, concealment, alleged misrepresentations, alleged violations of local, state or federal law, sale of stock, or other matters involved, set forth, or referred to, or could have been alleged in or encompassed by, the complaints in the Derivative Action or the Demand; or (iv) arise out of, relate to, or concern the defense, settlement, or resolution of the Derivative Action, the Demand or the Released Claims.  Released Plaintiffs' Claims shall not include (i) claims to enforce the terms of the Stipulation and/or the Final Order and Judgment entered pursuant to it, (ii) exclusively direct claims (*i.e.*, as opposed to derivative claims) Evoqua shareholders may have in an individual capacity against Defendants, or (iii) the direct claims made in the Securities Class Action.

"Released Defendant Persons" means, the Defendants and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives,

administrators, or any other person or entity acting or purporting to act for or on behalf of any Defendant, and each of their respective predecessors, successors, and assigns.

30.    **Release of Claims by Defendants**:  Upon the Effective Date, the Defendants shall fully, finally, and forever release, relinquish and discharge each and all of the Released Plaintiff Persons, and covenant not to sue any Released Plaintiff Person, in each instance with respect to any Released Defendants' Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Defendants' Claims against the Released Plaintiff Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or the Final Order and Judgment.

"Released Defendants' Claims" means any and all claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, judgments, defenses, counterclaims, offsets, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Consolidated Action, the Demand or the Plaintiffs' Released Claims.  Released Defendants Claims' shall not include the right to enforce the terms of the Stipulation, the Settlement, and/or the Final Order and Judgment.

"Released Plaintiff Persons" means Plaintiffs, Merkwan, Plaintiffs' Counsel, and each and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Plaintiff, Merkwan or any counsel for any Plaintiff or Merkwan, and each of their respective predecessors, successors, and assigns, and all Current Evoqua Shareholders (solely in their capacity as Evoqua shareholders).

31.    **Unknown Claims**:  The releases above include "Unknown Claims."  "Unknown Claims" means any Released Claims that a Person granting a Release does not know or suspect to exist in his, her, or its favor at the time of the Release, including without limitation those which, if known, might have affected the decision to enter into or object to the Settlement.  With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs, Merkwan, Evoqua and Defendants shall have expressly waived, and each of the other Current Evoqua Shareholders shall be deemed to have, and by operation of the Final Order and Judgment

by the Court shall have, waived, relinquished, and released any and all provisions, rights and benefits conferred by or under California Civil Code § 1542 or any law or principle of common law of the United States or any state or territory of the United States which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiffs, Merkwan, Defendants, and Evoqua acknowledge, and all other Current Evoqua Shareholders by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, Merkwan, Defendants, Evoqua, and all other Current Evoqua Shareholders by operation of law, to completely, fully, finally and forever extinguish any and all Released Claims without regard to the subsequent discovery of additional or different facts.   Plaintiffs, Merkwan, Defendants, and Evoqua acknowledge, and all other Current Evoqua Shareholders by operation of law shall be deemed to have acknowledged, that this waiver and the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and is a material element of the Settlement and was relied upon by each and all of the Parties in entering into the Stipulation and agreeing to the Settlement.

## VI.   PLAINTIFFS' COUNSEL'S FEES AND EXPENSES

32.   Plaintiffs' Counsel intend to file their Application for an award of attorneys' fees and litigation expenses including Plaintiff Service Awards.  Plaintiffs' Counsel intend to apply for an award of attorney's fees, inclusive of counsel's expenses and Plaintiff Service Awards, in an amount not to exceed $610,000, to be paid by Evoqua and the Individual Defendants' insurers. The Parties accepted a double-blind mediator's proposal for the amount of the attorneys' fees and expenses. The Plaintiff Service Awards shall not exceed $2,000 per each of the plaintiffs and Merkwan, with any such award to be paid out of any attorneys' fees awarded by the Court.  In recognition of the benefits conferred on Evoqua and its stockholders as a result of the Revised Practices, Defendants have agreed that they shall not oppose the Application.   The Parties agree that any award of attorneys' fees and litigation expenses ordered by the Court shall fully satisfy any and all claims for an award of attorneys' fees and litigation expenses in connection with the Consolidated Action and the Demand.  No Defendant (including Evoqua) shall be liable for or obligated to pay any fees, expenses, costs, or disbursements, or to incur any expenses on behalf of, Plaintiffs, Merkwan, Plaintiffs' Counsel, or any counsel purporting to represent any other Evoqua shareholder, directly or indirectly, in connection with the Consolidated Action, the Demand, or the Settlement, except as expressly provided for in the Stipulation.  Evoqua shareholders are not personally responsible for any such fees and expenses.

## VII.   SETTLEMENT HEARING

33.     The Court will consider the Settlement and all matters related to the Settlement at the Settlement Hearing.  The Settlement Hearing will be held before the Honorable Maureen P. Kelly on _____, 2021, at _____, at the United States Courthouse for the Western District of Pennsylvania, 700 Grant Street, Courtroom 9C, Pittsburgh, Pennsylvania 15219 or via telephone or video-conference (in the discretion of the Court).  At the Settlement Hearing, the Court will, among other things: (a) determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation, is fair, reasonable, and adequate to Evoqua and its stockholders, and should be finally approved by the Court; (b) determine whether the Court should enter the Final Order and Judgment dismissing the Consolidated Action with prejudice and extinguishing and releasing the Released Claims; (c) determine whether the Application and Plaintiff Service Awards should be approved; (d) hear and consider any objections to the proposed Settlement, the Application, and/or Plaintiff Service Awards; and (e) rule on any other such matters as the Court may deem appropriate.

34.     **Please Note:** The date and time of the Settlement Hearing may change without further notice.  In addition, due to the Coronavirus pandemic or any other occurrence, the Court may decide to conduct the Settlement Hearing by telephone or video-conference, or otherwise allow Current Evoqua Shareholders to appear at the hearing remotely, without further notice.  In order to determine whether the date and time of the Settlement Hearing have changed, or whether Current Evoqua Shareholders must or may participate by phone or video, it is important that you monitor the Court's docket and Evoqua's corporate website, http://www.evoqua.com, before making any plans to attend the Settlement Hearing.  Any updates regarding the Settlement Hearing, including any changes to the date or time of the Settlement Hearing or updates regarding in-person or remote appearances at the Settlement Hearing, will be posted to the Court's docket and to Evoqua's corporate website, http://www.evoqua.com.

35.     Pending final determination by the Court of whether the Settlement should be approved, all proceedings in the Consolidated Action, other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation, have been stayed.  By order of the Court, pending final determination of whether the Settlement should be approved, Plaintiffs, Merkwan, and all other Evoqua shareholders are barred and enjoined from commencing, instituting, or participating in the prosecution of any action or proceeding in any forum of any kind asserting any of the Released Plaintiffs' Claims.

## VIII.  RIGHT TO ATTEND SETTLEMENT HEARING AND OBJECT TO THE SETTLEMENT

36.     Any Evoqua shareholder who continues to hold shares of Evoqua common stock as of the date of the Settlement Hearing may file a written objection to the Settlement or the Application, and appear and show cause, if he, she, or it has any cause, why the proposed Settlement should not be approved.  However, unless otherwise directed by the Court for good cause shown, no such Person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement unless that Person has filed a written objection with the Clerk of the Court at the United States Courthouse for the Western District of Pennsylvania, 700 Grant Street, Pittsburgh, Pennsylvania 15219, and served (by hand delivery, first class mail, or

overnight delivery service) copies of such objection on Plaintiffs' Counsel and Defendants' counsel at the addresses set forth below, with a copy emailed to Plaintiffs' Counsel at tbrown@thebrownlawfirm.com, pkim@rosenlegal.com, and holleman@bespc.com, and Defendants' counsel at peter.simmons@friedfrank.com and asoloway@paulweiss.com, so that the objection is **received** on or before _____, 2021:

| Plaintiffs' Counsel | Defendants' Counsel |
|---|---|
| The Brown Law Firm, P.C.<br>Attn: Timothy Brown<br>767 Third Avenue, Suite 2501<br>New York, New York 10017 | Fried, Frank, Harris, Shriver &<br>Jacobson LLP<br>Attn: Peter L. Simmons<br>One New York Plaza<br>New York, New York 10004 |
| The Rosen Law Firm, P.A.<br>Attn: Phillip Kim<br>275 Madison Avenue, 40th Floor<br>New York, New York 10016 | Paul, Weiss, Rifkind, Wharton &<br>Garrison LLP<br>Attn: Audra J. Soloway<br>1285 Avenue of the Americas<br>New York, New York 10019 |
| Bragar Eagel & Squire, P.C.<br>Attn: W. Scott Holleman<br>810 Seventh Avenue, Suite 620<br>New York, New York 10019 | |

37.     Any objections, filings, and other submissions:  (a) must identify the case name and docket number, *In re Evoqua Water Technologies Corp. Derivative Litigation*, Case No. 2:19-cv-00410-MPK (W.D. Pa.); (b) must state the name, address, and telephone number of the objector or, if represented by counsel, the name of the objector and the name, address, and telephone number of his, her, or its counsel; (c) must be signed by the objector or his, her or its counsel appearing on the objector's behalf; (d) must contain a specific, written statement of the objection(s) and the specific reason(s) for the objection(s), including any legal and evidentiary support the objector wishes to bring to the Court's attention, and if the objector has indicated that he, she, or it intends to appear at the Settlement Hearing, the identity of any witnesses the objector may call to testify and any exhibits the objector intends to introduce into evidence at the hearing; and (e) must include documentation sufficient to prove that the objector owned shares of Evoqua common stock as of July 28, 2021 and contain a statement that the objector continues to hold such shares as of the date of filing of the objection and will continue to hold those shares as of the date of the Settlement Hearing.  Documentation establishing ownership of Evoqua common stock may consist, for example, of copies of monthly brokerage account statements (with account numbers, home addresses and unrelated stock holdings redacted), or an authorized statement from the objector's broker or investment advisor attesting to the objector's beneficial ownership of Evoqua stock and containing information similar to that found in an account statement.

38.     Unless the Court orders otherwise, any Person who or which does not make his, her, or its objection in the manner provided herein shall:  (a) be deemed to have forever waived his, her, or its right to object to any aspect of the proposed Settlement and the Application; (b) be

forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement or the Application; and (c) be deemed to have waived and forever be barred and foreclosed from being heard in this or any other proceeding with respect to any matters concerning the Settlement or the Application.

## IX.   HOW TO OBTAIN ADDITIONAL INFORMATION

39.     This Notice provides only a summary of the terms and conditions of the proposed Settlement and does not describe all of the details of the Stipulation.  For the precise terms and conditions of the Settlement, you may review the Stipulation filed with the Court, which, along with the pleadings and records of the Consolidated Action, may be inspected during business hours, at the Office of the Clerk of the Court, United States Courthouse for the Western District of Pennsylvania, 700 Grant Street, Pittsburgh, Pennsylvania 15219, or, if the Court is closed to the public for any reason including the COVID-19 pandemic, you may review the public filings in the Consolidated Action via the Administrative Office of the Court's website for Public Access to Electronic Court Records ("PACER") at www.pacer.gov.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on Evoqua's corporate website, http://www.evoqua.com.

40.     If you have questions regarding this Notice or the Settlement, please direct them to the following representative for Plaintiffs' Counsel:  Timothy Brown, The Brown Law Firm, P.C., 767 Third Avenue, Suite 2501, New York, New York 10017, Telephone: (516) 922-5427.

**PLEASE DO NOT CALL, WRITE, OR OTHERWISE DIRECT QUESTIONS TO EITHER THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE**

DATED: _____, 2021                    BY ORDER OF THE DISTRICT COURT, UNITED STATES DISTRICT COURT WESTERN DISTRICT OF PENNSYLVANIA

25189900

# EXHIBIT D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE EVOQUA WATER TECHNOLOGIES CORP. DERIVATIVE LITIGATION | Case No. 2:19-cv-00410-MPK |

## **[PROPOSED] FINAL ORDER AND JUDGMENT**

This matter came before the Court for hearing pursuant to an Order of the Court, dated _____, 2021 [ECF No. __] (the "Preliminary Approval Order") for final approval of the proposed settlement (the "Settlement") set forth in the Stipulation and Agreement of Settlement, dated July 28, 2021 (the "Stipulation"). The Court has considered all papers filed and evidence offered in support of the proposed Settlement, the attorneys for the Parties have been heard, and an opportunity to be heard was provided to all other persons requesting to be heard in accordance with the Preliminary Approval Order.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      **Definitions**: Unless otherwise defined in this Final Order and Judgment, the capitalized terms used in this Final Order and Judgment shall have the same meanings set forth in the Stipulation.

2.      **Jurisdiction**:   For purposes of effectuating the Settlement, the Court has jurisdiction over the subject matter of this Consolidated Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties, including all Evoqua stockholders.

3.      **Derivative Action Properly Maintained**: Based on the record in the Consolidated Action, the Court finds that each of the provisions of Rule 23.1 of the Federal Rules of Civil Procedure (the "Federal Rules") has been satisfied and that the Consolidated Action has been

properly maintained according to Rule 23.1 of the Federal Rules.  The Court finds that Plaintiffs

and Plaintiffs' Counsel have adequately represented the interests of Evoqua and its stockholders

both in terms of litigating the Consolidated Action and for purposes of entering into and

implementing the Settlement.

4.      **Notice**:  The Court finds that the dissemination of the Notice:  (a) was implemented

in accordance with the Preliminary Approval Order; (b) constituted notice that was reasonably

calculated, under the circumstances, to apprise Current Evoqua Shareholders of:  (i) the pendency

of the Consolidated Action; (ii) the effect of the proposed Settlement (including the Releases to be

provided thereunder); (iii) the application of Plaintiffs' Counsel for an award of attorneys' fees

and litigation expenses (as set forth in Paragraph 15 of the Stipulation) (the "Application") and

Plaintiff Service Awards; (iv) their right to object to the Settlement and/or the Application

(including Plaintiff Service Awards); and (v) their right to appear at the Settlement Hearing; (c)

constituted due, adequate, and sufficient notice to all Persons entitled to receive notice of the

proposed Settlement; and (d) satisfied the requirements of Rule 23.1 of the Federal Rules, the

United States Constitution, and all other applicable law and rules.

5.      **Final Settlement Approval and Dismissal of Claims**:  Pursuant to Rule 23.1 of

the Federal Rules, the Court fully and finally approves the Settlement set forth in the Stipulation

in all respects (including, without limitation, the Settlement consideration; the Releases; and the

dismissal with prejudice of the Consolidated Action and resolution of the Demand), and finds that

the Settlement is, in all respects, fair, reasonable, and adequate to Plaintiffs, Merkwan, Evoqua,

and Current Evoqua Shareholders.  This Court further finds the Settlement is the result of arm's-

length negotiations between experienced counsel representing the interests of Plaintiffs, Merkwan,

Defendants, and Current Evoqua Shareholders.  Accordingly, the Settlement is approved in all

respects.  The Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

6.      The Consolidated Action and all of the claims asserted against the Defendants in the Consolidated Action by Plaintiffs are hereby dismissed with prejudice.  The Parties shall bear their own fees, costs, and expenses, except as expressly provided in the Stipulation or in this Final Order and Judgment or otherwise agreed.

7.      **Binding Effect**:  The terms of the Stipulation and of this Final Order and Judgment shall be forever binding on Defendants, Plaintiffs, Merkwan, and all other Current Evoqua Shareholders, as well as their respective agents, executors, administrators, heirs, successors, affiliates, and assigns.

8.      **Release of the Released Defendant Persons**:  Upon the Effective Date:

(a)      Plaintiffs, Merkwan, and Evoqua shall, and each Current Evoqua Shareholder shall be deemed to have by operation of law and this Final Order and Judgment to, fully, finally, and forever release, relinquish and discharge each and all of the Defendants and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Defendant, and each of their respective predecessors, successors, and assigns (collectively, the "Released Defendant Persons"), and covenant not to sue any Released Defendant Person, in each

3

instance with respect to all claims or causes of action (including Unknown Claims, as defined in the Stipulation) against any of the Released Defendant Persons that (i) were asserted or could have been asserted derivatively in the Derivative Action or the Demand; (ii) would have been barred by *res judicata* had the Derivative Action been fully litigated to final judgment; (iii) that have been, could have been, or could in the future be, asserted derivatively in any forum or proceeding or otherwise against any of the Released Defendant Persons that concern, are based upon, involve, or arise out of or relate to any of the subject matters, allegations, transactions, facts, events, occurrences, disclosures, representations, statements, omissions alleged, acts, failures to act, alleged mismanagement, misconduct, concealment, alleged misrepresentations, alleged violations of local, state or federal law, sale of stock, or other matters involved, set forth, or referred to, or could have been alleged in or encompassed by, the complaints in the Derivative Action or the Demand; or (iv) arise out of, relate to, or concern the defense, settlement, or resolution of the Derivative Action, the Demand or the Released Claims (collectively, the "Released Plaintiffs' Claims").  Released Plaintiffs' Claims shall not include (i) claims to enforce the terms of the Stipulation and/or this Final Order and Judgment, (ii) exclusively direct claims (*i.e.*, as opposed to derivative claims) absent Evoqua shareholders may have in an individual capacity against Defendants, or (iii) the direct claims made in the Securities Class Action.

(b)     Plaintiffs, Merkwan, and Evoqua shall, and each Current Evoqua Shareholder shall be deemed to have by operation of law and this Final Order and Judgment forever be barred and enjoined from instituting, commencing, or prosecuting any of the Released Plaintiffs' Claims against any of the Released Defendant Persons except to enforce the releases and other terms and conditions contained in the Stipulation and/or this Final Order and Judgment. In addition, Plaintiffs and Merkwan agree not to initiate, prosecute, assist in, or facilitate the

prosecution of any other claims arising out of the facts giving rise to the Consolidated Action or the Demand.

9.      **Release of the Released Plaintiff Persons**:  Upon the Effective Date:

(a)      Defendants shall fully, finally, and forever release, relinquish and discharge each and all of Plaintiffs, Merkwan, Plaintiffs' Counsel, and each and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Plaintiff, Merkwan or any counsel for any Plaintiff or Merkwan, and each of their respective predecessors, successors, and assigns, and all Current Evoqua Shareholders (solely in their capacity as Evoqua shareholders) (collectively, the "Released Plaintiff Persons"), and covenant not to sue any Released Plaintiff Person, in each case with respect to any and all claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, judgments, defenses, counterclaims, offsets, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (as defined in the Stipulation), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or

resolution of the Consolidated Action, the Demand or the Plaintiffs' Released Claims (collectively, the "Released Defendants' Claims").  Released Defendants Claims' shall not include the right to enforce the terms of the Stipulation, the Settlement, and/or this Final Order and Judgment.

(b)     Defendants shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Defendants' Claims against the Released Plaintiff Persons except to enforce the releases and other terms and conditions in the Stipulation and/or this Final Order and Judgment.

10.     **Award of Attorneys' Fees and Expenses**:  Plaintiffs' Counsel are hereby awarded attorneys' fees and litigation expenses in an aggregate amount of $610,000.00 (the "Fees and Expenses Award"), which sum the Court finds to be fair and reasonable.  Plaintiffs Dallas Torgersen and Robert Hyams and Merkwan are each awarded a service award of $2,000.00, to be paid out of the Fees and Expenses Award, which sum the Court finds to be fair and reasonable.

11.     No proceedings or court order with respect to the Fees and Expenses Award shall in any way disturb or affect this Final Order and Judgment (including precluding this Final Order and Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or court order shall be considered separate from this Final Order and Judgment and to that extent, this Final Order and Judgment may be treated as final under Rule 54(b) of the Federal Rules.

12.     **Rule 11 Findings**:  The Court finds that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules in connection with the institution, prosecution, defense, assertion, and settlement of the Consolidated Action and the Demand.

13.    **No Admissions**:  Neither this Final Order and Judgment, the Stipulation, nor any act or omission in connection therewith is intended or shall be deemed to be a presumption, concession, or admission by:  (a) any of the Defendants or any of the other Released Defendant Persons as to the validity of any claims, causes of action, or other issues raised, or which might be or have been raised, in the Consolidated Action or in any other litigation, or to be evidence of or constitute an admission of wrongdoing or liability by any of them, and each of them expressly denies any such wrongdoing or liability; or (b) Plaintiffs or Merkwan or any of the other Released Plaintiff Persons as to the infirmity of any claim or the validity of any defense, or to the amount of any damages.  The existence of the Stipulation, its contents, or any negotiations, statements, or proceedings in connection therewith, shall not be offered or admitted in evidence or referred to, interpreted, construed, invoked, or otherwise used by any Person for any purpose in the Consolidated Action or otherwise, except as may be necessary to effectuate the Settlement.  This provision shall remain in force in the event that the Settlement is terminated for any reason whatsoever.  Notwithstanding the foregoing, any of the Released Persons may file the Stipulation or any judgment or order of the Court related hereto in any other action that has been or may be brought against them, in order to support any and all defenses or counterclaims based on *res judicata*, collateral estoppel, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14.    **Termination of Settlement**:  If the Settlement is terminated pursuant to Paragraph 13 of the Stipulation, then: (a) this Final Order and Judgment shall be vacated and shall become null and void and of no further force and effect, except as otherwise provided by the Stipulation, and this Final Order and Judgment shall be without prejudice to the rights of Plaintiffs, Merkwan, all other Evoqua stockholders, and Defendants; (b) the Stipulation and the Settlement (including

the Releases given pursuant to the terms of the Stipulation) shall be cancelled and shall become null and void and of no force and effect, except as specifically provided in the Stipulation; and (c) the Parties shall be restored to their respective positions in the Consolidated Action immediately prior to the execution of the Stipulation.

15.     **Modification of the Stipulation**: Without further approval from the Court, Plaintiffs, Merkwan, and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any attached exhibits to effectuate the Settlement that: (a) are not materially inconsistent with this Final Order and Judgment; and (b) do not materially limit the rights of the Parties or Current Evoqua Shareholders in connection with the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16.     **Retention of Jurisdiction**:  Without affecting the finality of this Final Order and Judgment in any way, this Court retains continuing and exclusive jurisdiction over the Parties and all Current Evoqua Shareholders for purposes of the administration, interpretation, implementation, and enforcement of the Settlement.

17.     **Entry of Final Judgment**:  There is no just reason to delay the entry of this Final Order and Judgment as a final judgment in the Consolidated Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in the Consolidated Action.

IT IS SO ORDERED.

DATED: _____

_____
THE HONORABLE MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

25189901